UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH SIMS,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>        Defendants. | Case No. 14-cv-00576-SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>Re: Dkt. Nos. 47, 59 |

On March 13, 2015, the Court heard argument on defendants' motion for summary judgment. On March 16, 2015, the Court vacated the hearing set for March 20, 2015 on plaintiff's motion for sanctions. For the reasons stated below, the Court **GRANTS** defendants' motion for summary judgment, and **DENIES** plaintiff's motion for sanctions.

## BACKGROUND

### I. Factual Background

This is an employment discrimination case. Pro se plaintiff, Joseph Sims III, is an employee of the City and County of San Francisco ("the City"), working as a street sweeping truck driver for the Department of Public Works ("DPW") since 2000. Complaint ¶ 2. He alleges that defendants discriminated against him on the basis of his race (black), age (currently 59 years old), and disability (an injury to his shoulder), and have also retaliated against him for complaining of their discriminatory acts. *Id.* ¶ 1.

In July of 2008, plaintiff injured his shoulder while performing work-related duties. *Id.* ¶ 2. Plaintiff's shoulder was reinjured in October of 2008 when he was allegedly struck by a DPW vehicle (defendants contend that it was in fact plaintiff who hit the side of the vehicle with his hand as it passed him). *Id.* Plaintiff applied for and received workers compensation benefits. *Id.*

Plaintiff returned to work in November of 2008, and was placed on modified duty as a security guard at the entrance to the facility until June of 2009 to accommodate his injury. Docket No. 47, Def. Mot. at 4. In July of 2009, plaintiff had surgery on his shoulder, and returned to work in November 2009 and assumed his regular truck driving duties. *Id.* at 5.

Plaintiff argues that his modified duty assignment "placed him in a position to be ridiculed," and that white employees with similar injuries were allowed to stay at home to recuperate or given desk jobs indoors. Complaint ¶ 22. He also notes feeling "ostracized" by his coworkers, who "snickered" and "laughed" whenever he entered a room. *Id.* He describes various instances in which coworkers momentarily blocked his truck from leaving the station, causing him to reroute his truck and delay his departure, and engaged in reckless driving in order intimidate him. *Id.* ¶¶ 22, 26. "These various incidents have frightened Plaintiff and have caused emotional strain and nervous breakdown to Plaintiff." *Id.* ¶ 22. Plaintiff also complains of being stalked by certain DPW employees.[1] *Id.* ¶ 29. Plaintiff alleges that his supervisors have failed to adequately investigate his complaints, *id.* ¶¶ 22-23, and in fact parroted rumors that employees should "stay away from" and "watch out for plaintiff." *Id.* ¶ 37.

Plaintiff filed his complaint in California Superior Court on December 23, 2013. Plaintiff alleges causes of action under 42 U.S.C. § 1981 ("Section 1981"), California Fair Employment and Housing Act ("FEHA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans With Disabilities Act ("ADA"), and Age Discrimination in Employment Act ("ADEA"). Plaintiff names as defendants the City, Paul Renzi, Phil Galli, Joel Primes, John Sheehan, and Jack Sullivan. Complaint ¶¶ 9-14. On February 6, 2014, the City removed this case to federal court pursuant to 28 U.S.C. § 1441, and answered the complaint on that same day. Docket No. 1. The

---

[1] Plaintiff has also made multiple reports to the City Police and the FBI alleging that agents of the City have been following him on the street in unmarked cars, at his church, and surveilling him while he is at his home. Docket No. 51, Exh. A; Sims Dep. I. at 108:4-25, 109:14-25, 161:4-163:11.

2

individual defendants answered in April of 2014. Docket Nos. 15-18. Defendants filed an amended notice of removal on May 23, 2014. Docket No. 30. On May 19, 2014, plaintiff voluntarily dismissed defendant Jack Sullivan from this action. Docket No. 29.

## II.   Past Lawsuits and Administrative Actions

### A.   WCAB

On February 8, 2010, plaintiff filed a complaint with the Workers Compensation and Appeals Board ("WCAB") alleging that the City intentionally discriminated and retaliated against him for receiving worker's compensation benefits. Docket No. 51, Exh. A. On January 3, 2011, the parties reached a settlement. *Id.* at Exh. B.

### B.   EEOC

On December 9, 2011, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming he was discriminated against on the basis of his disability and worker's compensation benefits. *Id.* at Exh. D. On February 8, 2012, the US Department of Justice ("DOJ") responded by issuing plaintiff a right to sue letter, apprising him of his obligation to file suit within 90 days of his receipt of the letter if he chose to institute a civil action. *Id.* at Exh. G. On June 19, 2013, plaintiff filed a new charge of discrimination with the EEOC, alleging discrimination, harassment, and retaliation on the basis of age and race. *Id.* at Exh. K. On July 19, 2013, the DOJ issued plaintiff a right to sue letter in connection with his latest charge of discrimination under Title VII and the ADEA. *Id.* at Exh. L.

### C.   DFEH

On December 10, 2011, plaintiff filed a complaint with the California Department of Fair Employment and Housing ("DFEH"), alleging discrimination, harassment, and retaliation on the

basis of race and age. *Id.* Exh. E. In the section of the form requesting a description of the reasons the plaintiff believed he was being discriminated against, he focused almost exclusively on perceived discrimination related to his receiving worker's compensation benefits [2]: "This has been ongoing since my return from surgery for a workers comp injury. I firmly believe this harassment and being ostracize [*sic*] by my coworkers are a direct result of management's resentment for a favorable ruling against public works." *Id.* On the same day, DFEH issued plaintiff a right to sue letter, noting that if he chose to file suit, he must do so within one year from the date of the letter. *Id.* On October 4, 2013, plaintiff filed an amended complaint of discrimination with DFEH to include more recent events which transpired between February to June of 2013; he received a right to sue letter on that same day. *Id.* at Exh. M. On October 5, 2013, plaintiff amended his complaint of discrimination for a second time, and received a new right to sue letter based on his second amended complaint of discrimination on that same day. *Id.* at Exh. N.

### D. State Court

On November 23, 2011 plaintiff filed a complaint in California Superior Court which mirrors most of the allegations in the case at bar. The complaint alleged causes of action for employment discrimination, harassment, retaliation, intentional infliction of emotional distress, and negligence, all premised on plaintiff's disabled status and collection of worker's compensation benefits. *Id.* at Exh. C. On July 16, 2012, plaintiff filed a first amended complaint to include allegations that he was also discriminated against on the basis of his race. *Id.* Exh. H. On February 11, 2013, the City moved for summary judgment. *Id.* at Exh. I. On April 30, 2013, plaintiff filed a voluntary dismissal of all his claims *without prejudice*. *Id.* at Exh. J.

---

[2] As noted above, plaintiff reached a settlement with the City regarding worker's compensation benefits, and is therefore precluded from raising this cause of action in this forum. *Id.* at Exh. B.

4

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

**DISCUSSION**

**I.      Timeliness**

Defendants argue that, except for his § 1981 claim, plaintiff's state and federal discrimination claims are time barred.

To state a retaliation or discrimination claim under Title VII, a plaintiff must file a Charge of Discrimination with the EEOC no more than 180 days after the alleged violation. *See* 42 U.S.C. § 2000e-16(c). If the plaintiff first files a claim with a state agency (such as the DFEH), then the charge must be filed within the earlier of 300 days after the alleged unlawful employment practice occurred, or thirty days after receiving notice that the state agency has terminated the proceedings. Such notice often comes in the form of a right to sue letter. 42 U.S.C. § 2000e-5(e)(1). The timely exhaustion of this administrative remedy is a statutory prerequisite to filing a Title VII claim. *See Sommatino v. United States*, 255 F.3d 704, 707-08 (9th Cir. 2001). DFEH and EEOC have a "work sharing agreement" whereby each is designated as the other's agent for purposes of receiving charges. *E.E.O.C. v. Dinuba Med. Clinic*, 222 F.3d 580, 585 (9th Cir. 2000). Therefore, "a charge initially filed with [DFEH] will be treated as constructively filed with the EEOC upon either the expiration of 60 days or the termination of [DFEH] proceedings, whichever occurs first." *Id.* Under Title VII, ADA, and ADEA, a plaintiff has 90 days after receipt of the EEOC's right to sue letter to file a complaint in federal court. *See* 42 U.S.C. § 2000e-5(f)(1); *Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1245 (9th Cir. 2010).

FEHA also has its own exhaustion requirements, which impose a duty upon plaintiffs to file a written charge of discrimination with DFEH within one year of the alleged violation, and exhaust his administrative remedies. Cal. Govt. Code § 12960(d); *Rodriguez v. Airborne Express,* 265 F.3d 890, 896 (9th Cir.2001); *see also Alberti v. City & Cnty. of San Francisco Sheriff's Dep't*, 32 F. Supp. 2d 1164, 1174 (N.D. Cal. 1998) ("An EEOC right-to-sue letter does not satisfy the jurisdictional requirement of exhaustion of remedies as to FEHA claims."). Upon receiving a right

6

to sue letter from DFEH, a plaintiff has one year to file his FEHA claims in a judicial forum. Cal. Govt. Code § 12965(b).

### A.     Federal Causes of Action

On February 8, 2012, plaintiff received a right to sue letter from the DOJ for his claims under the ADA. Docket No. 51, Exh. G. On July 19, 2013, plaintiff received a right to sue letter from the DOJ for claims under Title VII and the ADEA. *Id.* Exh. L. Both letters apprised plaintiff that he had a maximum of 90 days to file a civil action. Plaintiff filed the present lawsuit in December of 2013, well after the 90 day period had expired on both letters. Therefore, plaintiff's claims under Title VII, ADA, and ADEA are time barred. *See Stiefel* 624 F.3d at 1245 (9th Cir. 2010). Accordingly, the Court **GRANTS** defendant's motion for summary judgment as to these claims.

### B.     FEHA

Plaintiff received right to sue letters from DFEH on December 10th and 16th of 2011. Docket No. 51, Exhs. E-F. These letters carried with them a one-year limitation to file a civil action based on the facts alleged in the complaint filed with DFEH. Plaintiff did not file this action until December of 2013; all claims associated with the December 2011 right to sue letters are therefore time barred.[3]

Plaintiff received right to sue letters from DFEH on October 4th and 5th of 2013 based on

---

[3] Plaintiff's first state court case was filed within the one-year statutory period. However, as noted above, plaintiff dismissed this case without prejudice in April of 2013. When a plaintiff voluntarily dismisses a suit without prejudice, it "leaves the situation the same as if the suit had never been brought in the first place." *Humphreys v. United States*, 272 F.2d 411, 412 (9th Cir. 1959). Therefore, "the statute of limitations … continued to run as if the suit had never been brought." *Lee v. AFT-Yakima*, No. CV-09-3112-EFS, 2011 WL 2181808, at *5 (E.D. Wash. June 3, 2011); *see also Troche v. Daley*, 217 Cal. App. 3d 403, 412, (Ct. App. 1990).

7

plaintiff's claims of race and age discrimination. Docket No. 51, Exhs. M-N. He also filed a charge of discrimination with the EEOC on July 19, 2013, which under the "work sharing agreement," can be deemed to have also been filed with DFEH. *Id.* Exh. K. Claims associated with these right to sue letters are timely. Therefore, plaintiff's state law discrimination claims are limited to FEHA claims of race and age discrimination premised upon actions which occurred on or after July 19, 2012, the year preceding plaintiff's July 19, 2013 charge of discrimination. *See* Cal. Govt. Code § 12960(d).

## II.     Section 1981 and FEHA

Plaintiff's remaining discrimination claims include a claim for racial discrimination under § 1981, and a claim for disparate treatment and retaliation based on race and age under FEHA.

To establish a discrimination claim under § 1981, a plaintiff must demonstrate that: (1) he is a member of a racial minority; (2) the defendant intentionally discriminated against the plaintiff on the basis of race; and (3) the discrimination concerned at least one statutorily enumerated activity, such as the making or enforcement of contracts. *See Ennix v. Stanten*, No. C 07-02486 WHA, 2007 WL 2462119, at *8 (N.D. Cal. Aug. 28, 2007). A plaintiff pursuing a § 1981 claim cannot rely upon disparate impact evidence to make his case; instead, he must allege that the defendants purposefully discriminated against him. *See Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 389-91 (1982); *Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 536 (9th Cir. 1982) ("[S]ection 1981 is limited to claims of intentional discrimination."). To successfully state a claim under § 1981, a plaintiff must establish that the defendant's intentional racial discrimination resulted in the impairment of, or prevented the creation of, a contractual relationship. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Importantly, "[s]ection 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.* at 480.

A plaintiff may establish intentional discrimination under § 1981 in two ways: he may allege facts that would support a finding of disparate treatment under Title VII, *see Gay*, 694 F.2d at 539, or he may allege facts that would support a finding of retaliation, *see CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008).

The analysis of plaintiff's disparate treatment and retaliation claims under FEHA is the same as the analysis required for evaluation of his § 1981 claims. "California courts have relied upon federal interpretations of Title VII to interpret analogous provisions of [FEHA], which prohibits unlawful discrimination." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

### A.  Disparate Treatment

To establish a prima facie case of disparate treatment, a plaintiff must allege facts demonstrating that: (1) he is a member of a protected class; (2) he was qualified for the position he sought or held; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated differently. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

As an initial matter, plaintiff has produced almost nothing in the way of admissible evidence. *See* Docket No. 61, Pl. Opp'n Exhs. 1-16. Furthermore, even if the Court were to credit his allegations as evidence, they fail to show that he suffered any adverse employment action, nor do they establish that any of the purported harms he suffered were due to his race or age.

The Ninth Circuit defines adverse employment action "broadly," *Fonseca v. Sysco Food Servs. of Ariz. Inc.*, 374 F.3d 840, 847 (9th Cir. 2004), as an act that "materially affect[s] the compensation, terms, conditions, or privileges" of employment. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008), *citing Chuang v. Board of Regents*, 225 F.3d 1115, 1125-26 (9th Cir. 2000). To constitute an adverse employment action, the act "must result in a substantial adverse

change in the terms and conditions of the plaintiff's employment. A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient." *Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1455 (2002).

Plaintiff contends that his temporary reassignment to security guard duty at the entrance or exit of the facility, made in order to accommodate his shoulder injury, put him in a position to be "ridiculed" by his coworkers, who "snickered" and "laughed" at him. Pl. Opp'n at 13. Plaintiff contends that white employees with similar injuries were allowed to go home and recuperate, or given jobs that did not require them to be outdoors. *Id.* at 12-13. Plaintiff submits no evidence to support these allegations. Moreover, his deposition testimony -- and subsequent amendments by errata -- demonstrate that plaintiff could only identify one other black employee who was given this assignment, but had seen "a couple" of white employees working security guard duty. Pl. Dep. I. 37:9-25; Pl. Dep. I. Errata. Therefore plaintiff has failed to show that similarly situated individuals outside his protected class were treated differently.

Plaintiff has also failed to show why receiving a workplace accommodation on account of his injury constitutes an adverse employment action. While it may not have been his first choice, plaintiff has not shown that this temporary reassignment resulted in reduced pay, reduced opportunity to be promoted, or anything else which could be construed to materially affect the "compensation, terms, conditions, or privileges" of his employment. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919, nt. 3 (9th Cir. 1996) (transfer to different work location without a diminution in pay deemed not to be an adverse employment action).

Plaintiff also describes numerous instances where his coworkers engaged in various tactics to block him from leaving the facility, such as blocking his truck with their truck so that he momentarily could not leave the yard. He also alleges one instance in which a coworker stood in his way so that he could not sign into work. Finally, plaintiff appears to believe that DPW employees, as well as employees from other City departments, intentionally park their vehicles on

his sweeping routes so as to frustrate his attempts to perform his duties. However, plaintiff has not alleged any consequences stemming from these incidents which could properly be construed as an adverse employment action. "Title VII, [the Supreme Court] [has] said, does not set forth 'a general civility code for the American workplace.'"; *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citing *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). Plaintiff cannot rely on FEHA or § 1981 to remedy the "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington* 548 U.S. at 68.

Additionally, plaintiff has entirely failed to show that he was subjected to any of these experiences on account of his race or age. While plaintiff does allege a single instance in which he was called a racial epithet by a coworker, Pl. Dep. II. at 154:1-155:6, 171L2-15,[4] "a 'single, isolated discriminatory comment' [even] by [a] plaintiff's immediate supervisor [is] insufficient to trigger burden shift[ing] or to avoid summary judgment for defendant." *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990) (quoting *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314–16 (6th Cir.1989)); *see also Patterson v. Apple Computer, Inc.*, 256 F. App'x 165, 168 (9th Cir. 2007) *(*"Stray comments are insufficient to establish discrimination.").[5]

---

[4] Plaintiff testified at his deposition that one time co-worker Frank Perez "called me the N-word as I was going to enter my vehicle." Pl. Dep. II at 154:15-16. Plaintiff filed an Incident Report on August 20, 2014, the day of the incident, describing a generally unpleasant interaction with Perez and another co-worker and reporting that "as Perez walked away I believe he call me a 'niger' under his breath." Renzi Decl. Exh. B.

[5] Plaintiff's sixth cause of action entitled "negligent hiring, retention, and supervision," is actually a claim of discrimination based on a hostile work environment theory, predicated on his manager's refusal to adequately investigate his complaints or punish the coworkers he accused of discriminatory conduct. *See* Pl. Opp'n at 19 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)). To establish a prima facie case for a hostile work environment claim under Title VII, the plaintiff must show "(1) she was subjected to verbal or physical conduct because of her race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Manatt v. Bank of America, NA*, 339 F.3d 792, 798 (9th Cir. 2003) (quoting *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002)) (internal quotation marks omitted). The "working environment must both

11

Finally, plaintiff complains that he has not been trained to operate two types of trucks that offer premium pay. Plaintiff's supervisor, Paul Renzi, notes that at "numerous mandatory meetings," he offered training on these two types of trucks to anyone that was interested, and that plaintiff has never requested to be trained. Renzi Decl. ¶ 12. He also suspected that plaintiff has already received such training before Renzi began working at DPW. *Id.* Plaintiff's testimony essentially echoes Renzi's account. Plaintiff admits that his seniority is too low to bid on one of the trucks, and for the other, he acknowledges that he has not even asked to be trained. Pl. Dep. II 47:17-25; 53:23-54:5. Plaintiff cannot complain of discrimination when his own testimony shows that he understands that the reasons he was not offered these opportunities were non-discriminatory reasons – namely, lack of seniority and failure to express interest.

Accordingly, the Court **GRANTS** defendant's motion as to plaintiff's cause of action for disparate treatment under FEHA and § 1981.[6]

In their motion, defendants attempt to undermine plaintiff's claims by highlighting numerous times that (1) many of the employees who allegedly discriminated against plaintiff were also black, and (2) one of the operators of one of the trucks that offers premium pay is black. Def. Mot. at 7, 9, 10, 11, 16, 18. While plaintiff has not introduced sufficient evidence to create a

---

subjectively and objectively be perceived as abusive." *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)) (internal quotation mark omitted). "Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." *Id.* The "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* (citations omitted). Title VII hostile work environment standards are also applicable to FEHA. *Lyle v. Warner Bros. Television Products*, 38 Cal. 4th 264, 278-79 (2006). To the extent plaintiff's employment discrimination claims are based on a hostile work environment theory, they must fail for precisely the same reasons that his claim of disparate treatment is insufficiently proved.

[6] At argument on March 13, 2015, plaintiff noted that defendant Primes stated on an interrogatory that he had not previously been a party to a lawsuit, when in fact he had been involved in five or six law suits. Counsel for defendants responded that he had not previously been made aware of this issue. While, if true, such a discrepancy may bear on Primes' credibility, it would not raise a triable issue of fact, and therefore would not affect the ultimate outcome of this order.

triable material issue for trial, the Court pauses to note that this line of argument is unpersuasive, and fundamentally misapprehends the purpose of our anti-discrimination laws.

"[T]he aim of Title VII is to protect individuals, not groups." *Connecticut v. Teal*, 457 U.S. 440, 458 (1982). Therefore, the fact that a single black employee operates a truck that garners premium pay, does not preclude plaintiff from making out a claim that he was denied the opportunity to be trained to drive that same truck on account of being a black American. "The principal focus of the statute is the protection of the individual employee, rather than the protection of the minority group as a whole." *Teal*, 457 U.S. at 453-54. Therefore, "[a] racially balanced work force cannot immunize an employer from liability for specific acts of discrimination." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579. *Cf. Latta v. Otter,* No. 12-17668, 2014 WL 4977682, at *19 (9th Cir. Oct. 7, 2014) ("This focus in modern sex discrimination law on the preservation of the ability freely to make individual life choices regardless of one's sex confirms that sex discrimination operates at, and must be justified at, the level of individuals, not at the broad class level of all men and women."). Similarly, the fact that some of plaintiff's alleged harassers were also black does not weaken plaintiff's right to advance his career unfettered by race-based discrimination. *See Oncale* 523 U.S. at 75 ("this Court has rejected any conclusive presumption that an employer will not discriminate against members of his own race."); *Castaneda v. Partida*, 430 U.S. 482, 499 (1977) ("it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.").

### B.     Retaliation

To state a claim for retaliation under § 1981, a plaintiff must allege that: (1) he engaged in protected activity opposing an unlawful employment practice; (2) he suffered an adverse employment action; and (3) there was a causal link between the activity and the adverse

employment action. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2003); *see also Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 801 (9th Cir. 2003) (applying Title VII retaliation standard in § 1981 retaliation claim).

As noted above, the Ninth Circuit defines adverse employment action "broadly." *Fonseca* 374 F.3d at 847. This includes acts such as "lateral transfers, unfavorable job references, and changes in work schedules." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). However, "the statute does not limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer or demotion." *Id.*, *citing Passer v. Am. Chem. Soc.*, 935 F.2d 322, 331 (D.C. Cir. 1991). Nonetheless, case law has put some limiting principles on this otherwise expansive concept. In the retaliation context, the employer's act must be "reasonably likely to deter the [employee] from engaging in protected activity." *Ray* 217 F.3d at 1242-43. Furthermore, badmouthing an employee, or refusing to hold a job open for an employee, is not considered an adverse employment action. *Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th Cir. 2000). Additionally, actions that might otherwise be considered adverse will not state a claim for retaliation under § 1981 if they are subject to modification, or otherwise lack finality. *See Brooks* 229 F.3d at 930 ("Because the evaluation could well have been changed on appeal, it was not sufficiently final to constitute an adverse employment action.").

The third element, causation, may be inferred from the employer's "pattern of antagonism following the protected conduct," *Porter v. California Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005), as well as from the temporal proximity of the protected employment activity and the occurrence of the adverse employment act. *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987) (causation can be inferred from "employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision."). However, "[i]f a plaintiff relies solely on the proximity in time inference to support the causation prong, that proximity in time must be very close." *Williams v.*

14

*Tucson Unified Sch. Dist.*, 316 F. App'x 563, 564 (9th Cir. 2008); *see also Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003) (holding that nine months between the complaint and adverse decision was too long to establish causation).

While not entirely clear from his opposition brief, plaintiff presumably wishes to show that he was retaliated against for filing formal complaints of age and race discrimination with the EEOC, the DFEH, and his supervisors. While these actions certainly constitute "protected activities," for the reasons previously stated, none of the allegedly retaliatory acts which plaintiff describes rise to the level of an adverse employment action.[7] *See* Section II. A., *supra*; *see also Ray* 217 F.3d at 1243 (§ 1981 "does not cover every offensive utterance by co-workers, because offensive statements by co-workers do not reasonably deter employees from engaging in protected activity."). Plaintiff has also failed to establish a causal nexus between the allegedly retaliatory acts and the protected activities that he engaged in.

Accordingly, the Court **GRANTS** defendant's motion for summary judgment as to plaintiff's cause of action for retaliation under FEHA and § 1981.

## III. Motion for Sanctions

Plaintiff brings a motion for sanctions, alleging that defendants have failed to provide him with discoverable material, despite his many requests. Docket No. 59, Pl. Mot. at 4-5 ("Defendants simply did not respond to several of plaintiff's email [*sic*] and continued to take unreasonable positions when they finally met and conferred with Plaintiff."). In particular, plaintiff requests security video footage, and certain audio recordings.

However, upon reviewing the record, it appears that defendants did diligently correspond with plaintiff, including exchanging emails and meeting in person on December 12, 2014. Pl. Motion Exh. 1; Docket No. 63, Gschwind Decl. Defendants apprised plaintiff both in person and

---

[7] At argument on March 13, 2015, plaintiff explained that he had recently been put on indefinite administrative leave for actions he purportedly committed three or four years ago. There is no evidence concerning this issue before the Court, and the Court will therefore not consider it for purposes of ruling on this motion.

15

in writing that defendants did not, as a matter of policy, record audio communications over radio channels. Defendants also made clear that they were not in possession of the video plaintiff seeks either because there is no camera trained on the area plaintiff is interested in, or because video recordings are typically not stored for longer than 60 days. Gschwind Decl. ¶ 10.

At the December 19, 2014 case management conference ("CMC"), the Court told plaintiff that if he wished to resolve any discovery dispute, he should do so in accordance with the Court's standing order (meet and confer sessions, followed by letter briefs re: discovery disputes). However, plaintiff made no attempt to contact defendants after the CMC, *id.* ¶ 7, nor did he file any motion or letter with the Court seeking to compel discovery as outlined in the standing order. Plaintiff's failure to follow the Court's instructions renders his motion premature. Accordingly, the Court DENIES plaintiff's motion for sanctions.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motion for summary judgment, and **DENIES** plaintiff's motion for sanctions. This order resolves Docket Nos. 47 and 59.

**IT IS SO ORDERED.**

Dated: March 25, 2015

_____
SUSAN ILLSTON
United States District Judge